UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDREW T. FLIGOR and LESLYE P. FLIGOR, Plaintiffs, v. SELECT PORTFOLIO SERVICING and U.S. BANK NATIONAL ASSOCIATION, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:25-cv-11693-JEK |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**KOBICK, J.**

Plaintiffs Andrew Fligor and Leslye Fligor (together, the "Fligors") bring this breach of

contract action against defendants Select Portfolio Servicing ("SPS") and U.S. Bank National

Association, as trustee, successor in interest to Bank of America, National Association as trustee

as successor by merger to Lasalle Bank, National Association as trustee for WaMu Mortgage Pass-

Through Certificates Series 2007-OA4 Trust (the "Trust"). After the Fligors defaulted on their

mortgage payments, SPS, as their loan's servicer, sent them a 90-day Right-to-Cure letter, also

known as a default notice. Over a year later, they were sent a Notice of Acceleration, which

informed them that their mortgage note had been accelerated and that a foreclosure may be

forthcoming. In this lawsuit, the Fligors contend that the Notice of Acceleration does not strictly

comply with Massachusetts law or the terms of their mortgage contract. The defendants have now

moved for summary judgment. Because the Notice of Acceleration is not required by the mortgage,

is not subject to the strict compliance standard adopted by the Supreme Judicial Court, and is

otherwise valid, the defendants are entitled to judgment on the breach of contract claim and their motion will be granted.

## BACKGROUND

The following facts are undisputed. The Fligors own property at 335 Wellesley Street in Weston, Massachusetts. ECF 20, ¶ 10. They secured a $1,398,700 loan from Washington Mutual Bank, FA through a mortgage on that property in March 2007. ECF 27, ¶¶ 1-2. In April 2013, the mortgage was assigned to the defendant Trust, which remains the mortgagee of record. *Id.* ¶¶ 5-6; *see* ECF 21-2. SPS, the other defendant, is the Trust's loan servicer. ECF 27, ¶ 7.

Two provisions of the mortgage bear on this case. Paragraph 22 provides, in pertinent part:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

*Id.* ¶ 4. Paragraph 19—titled "Borrower's Right to Reinstate After Acceleration"—states that "Borrower shall have the right to have enforcement of this Security Instrument discontinued" "[i]f Borrower meets certain conditions." ECF 21-1, ¶ 19 (bold omitted). "Upon reinstatement by Borrower," it adds, "this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred." *Id.* Paragraph 19 concludes that "this right to reinstate shall not apply in the case of acceleration under [paragraph] 18." *Id.*; *see id.* ¶ 18 (addressing when "the Property is sold or transferred . . . without Lender's prior written consent").

2

The Fligors defaulted on their mortgage on November 1, 2023 and still owe the Trust for all mortgage payments since then. ECF 27, ¶¶ 8, 12. On December 22, 2023, SPS, on behalf of the Trust, sent the Fligors a "90-Day Right to Cure Your Mortgage Default" notice by certified mail, with return receipt requested, and by first class mail. *Id.* ¶ 9. The body of the default notice conformed to the template notice prescribed by the Division of Banks at 209 Code Mass. Regs. 56.04, which implements M.G.L. c. 244, § 35A. *Compare* ECF 20-5, *with* 209 Code Mass. Regs. 56.04. The notice stated that "[t]he mortgage on [the Fligors'] property is in default as a result of [their] failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument)," and that they "must pay the past due amount of $21,215.01 on or before March 24, 2024, which is 90 days from the date of this notice." ECF 20-5, at 6, 8. It further stated:

> If we do not receive the past due amount by the date listed in the notice, or some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require the immediate payment in full of the entire outstanding unpaid amount on the account. In other words, failure to cure the default on or before March 24, 2024 may result in acceleration of sums secured by the Security Instrument and sale of the Property.

*Id.* at 8. The default notice also detailed the Fligors' "right to bring a court action to assert the non-existence of a default or any other defense [they] may have to acceleration and sale" and their "right to reinstate after acceleration of [their] loan." *Id.*

SPS sent the Fligors monthly statements in February and March 2025. ECF 27, ¶ 10. On March 4, 2025, Harmon Law Offices, P.C., on behalf of SPS and the Trust, sent the Fligors a Notice of Acceleration. *Id.* ¶ 11. This notice stated that "the note is hereby accelerated," and that "[e]ven though the note has been accelerated, [the Fligors] *may* still have the right to reinstate the loan." ECF 20-7, at 3, 5 (emphasis added). "If so, and if [they] desire to reinstate the loan," the notice added, they "will need to pay an amount of money sufficient to bring the loan fully current." *Id.*

The Fligors filed a complaint in Middlesex Superior Court against the Trust and SPS in May 2025. ECF 1-1. Invoking diversity jurisdiction, the defendants removed the case to this Court in June 2025. ECF 1.[1] Following discovery, the defendants moved for summary judgment. ECF 17. The Fligors oppose that motion. ECF 26. The only claim that they now assert is that, as alleged, the Notice of Acceleration's statement that they "'*may* have the right to reinstate the Mortgage'" does not strictly comply with the terms of their mortgage because it nullifies their "unequivocal right to reinstate [their] mortgage." ECF 1-1, ¶ 25; *see* ECF 26, at 3-9. The Court held a hearing and took the motion under advisement. ECF 31.

## STANDARD OF REVIEW

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual determination which a rational factfinder could make as to the existence or nonexistence of a fact that has the potential to change the outcome of the suit." *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quotation marks omitted). Courts "must consider the record and the reasonable

---

[1] The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, as the complaint demanded $1.9 million and the original principal amount of the mortgage was $1,398,700. ECF 27, ¶ 1; ECF 7, at 19; *see McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212-13 (1st Cir. 2012). There is also complete diversity of citizenship. The Fligors are citizens of Massachusetts. ECF 1-1, ¶ 5. SPS is incorporated and has its principal place of business in Utah. ECF 1, ¶ 7. And the Trust is a national banking organization with articles of association that designate Delaware as its main office. *Id.* ¶ 6; *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).

inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit conclusory allegations, improbable inferences, and unsupported speculation." *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quotation marks omitted). The non-moving party may not simply "rest upon mere allegation or denials," but instead must "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### DISCUSSION

While the Fligors challenge the validity of the March 2025 Notice of Acceleration, they do not contest the validity of the December 2023 default notice. As "'a non-judicial foreclosure state,'" Massachusetts "allows a mortgagee to foreclose on a mortgaged property without judicial authorization, so long as the mortgage instrument grants that right by reference to the statutory power of sale." *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 291 (2020) (citing *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, 232 (2015)). To exercise that "'[s]tatutory power of sale,'" a mortgagee must "first compl[y] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." M.G.L. c. 183, § 21. "Because of the 'substantial power . . . to foreclose in Massachusetts without judicial oversight,'" the Supreme Judicial Court "repeatedly ha[s] emphasized that 'one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale is wholly void.'" *Thompson*, 486 Mass. at 291 (quoting *Fed. Nat'l Mortg. Ass'n v. Marroquin*, 477 Mass. 82, 86 (2017)). Notices subject to strict compliance "must be accurate and not deceptive." *Id*. at 293.

The "regime of strict compliance" does not, however, require the "mortgagee to 'demonstrate punctilious performance of every single mortgage term.'" *Id.* at 292 (quoting *Pinti*, 472 Mass. at 235). The mortgagee must demonstrate strict compliance with "'(1) terms directly

5

concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale—whether before or after the sale takes place.'" *Id.* (quoting *Pinti*, 472 Mass. at 235). Strict compliance is not mandated for other requirements, including the pre-acceleration notice requirements set forth in M.G.L. c. 244, § 35A. *Id.* at 292-93; *see U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 422 (2014). Section 35A guarantees mortgagors the right to cure a default by making "full payment of all amounts that are due" within 90 days, during which time the mortgagee cannot accelerate the mortgage obligation—that is, demand full payment of the loan—and begin foreclosure proceedings on the property. M.G.L. c. 244, § 35A(a)-(b). Since Section 35A "is designed to give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced," the right to cure "is a preforeclosure undertaking" that does not "'relat[e] to the foreclosure of mortgages by the exercise of a power of sale.'" *Schumacher*, 467 Mass. at 431 (quoting M.G.L. c. 183, § 21). A loan servicer can, as SPS did here, send the borrower a "hybrid" notice that provides the notice required by both Section 35A and the terms of mortgage directly concerned with the foreclosure sale, with only the latter category of notice subject to the strict compliance standard. *Thompson*, 486 Mass. at 292-93 & n.7.

It is undisputed that SPS's December 2023 default notice strictly complied with paragraph 22 of the Fligors' mortgage—which sets out the "'terms of the mortgage' governing the power of sale" and is therefore subject to strict compliance, *Pinti*, 472 Mass. at 240—and also adhered to the corresponding provisions of M.G.L. c. 244, § 35A.[2] At issue instead is the March 2025 Notice

---

[2] Paragraph 22 of the Fligors' mortgage is the same as paragraph 22 of the standard form mortgage provided by the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) analyzed in *Pinti*. *Compare* ECF 21-1, ¶ 22, *with Pinti*, 472 Mass. at 228 n.6, 236 n.16. Consistent with section 22(a) of the Fligors' mortgage, the default notice stated that the "[t]he mortgage on [the Fligors'] property is in default as a result

of Acceleration. In the Fligors' view, whereas the default notice correctly stated that they "ha[d] the right to reinstate after acceleration of [their] loan," ECF 20-5, at 8, the Notice of Acceleration improperly stated that they "*may* still have the right to reinstate the loan" now that "the note has been accelerated," ECF 20-7, at 3, 5 (emphasis added). The Fligors argue that the use of the conditional word "may" fails to strictly comply with paragraph 22 because it did not unequivocally "inform [them] of the right to reinstate after acceleration." ECF 27, ¶ 4. To support this position, they rely principally on *Federal National Mortgage Association v. Marroquin*, where the Supreme Judicial Court invalidated a default notice that similarly stated that "the borrower '*may*, if required by law or [the borrower's] loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of [the borrower's] property if all amounts past due are paid within the time permitted by law.'" 477 Mass. at 89-90 (emphasis altered). This text, the Supreme Judicial Court held, "significantly, and inexcusably, differed from the language in paragraph 22 of the mortgage, and watered . . . down the rights provided in that paragraph to the mortgagor homeowner." *Id.* at 90 (quotation marks omitted).

The Fligors' argument is built on a false premise—namely, that paragraph 22, and thus strict compliance, applies to the Notice of Acceleration. That premise is unsupported by Massachusetts law, the mortgage itself, or relevant case law. The Supreme Judicial Court has made clear that "a foreclosure by statutory power of sale pursuant to G. L. c. 183, § 21 . . . is invalid

---

of [their] failure to make payments as required by the Note and Deed of Trust or Mortgage." ECF 20-5, at 8. In accordance with sections 22(b) and 22(c), the notice described how they can avoid foreclosure by "pay[ing] the past due amount of $21,215.01 on or before March 24, 2024." *Id.* at 6. Per section 22(d), the notice provided that "failure to cure the default on or before March 24, 2024 may result in acceleration of sums secured by the Security Instrument and sale of the Property." *Id.* at 8. And in line with the third sentence of paragraph 22, the notice disclosed that the Fligors "have the right to reinstate after acceleration of [their] loan" and "the right to bring a court action to assert the non-existence of a default or any other defense [they] may have to acceleration and sale." *Id.*

unless the *notice of default* strictly complies with paragraph 22 of the standard mortgage." *Id.* at 82-83 (citing *Pinti*, 472 Mass. at 227) (emphasis added). Its precedent addresses the mortgagee's obligations vis-à-vis the notice of default, not subsequent communications to the mortgagor. *See Stephens v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-cv-10225-ADB, 2022 WL 1608470, at *5 (D. Mass. May 20, 2022); *Kennedy v. Shellpoint Mortg. Servicing*, No. 24-cv-10763-ADB, 2025 WL 777214, at *6 (D. Mass. Mar. 11, 2025). And, once again, the Fligors do not contest that the December 2023 notice of default strictly complies with paragraph 22 of their mortgage.

Nothing in paragraph 22 indicates that it, as the Fligors argue, imposes "a continuing obligation" on the defendants, such that the subsequent Notice of Acceleration could nullify the prior valid default notice. ECF 26, at 5. To the contrary, paragraph 22 explains that no further action is required of the defendants to foreclose on the Fligors' property. *See* ECF 27, ¶ 4 ("If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law."); *see also Diplomat Prop. Manager, LLC v. Wilson*, 99 Mass. App. Ct. 1104 (2020) (Rule 23.0 decision) ("The terms of paragraph 22 were strictly complied with, and thus the foreclosure sale of the property to Diplomat was valid."). Paragraph 22 also concerns only the notice that the defendants must provide the Fligors "prior to acceleration." ECF 27, ¶ 4; *see Thompson*, 486 Mass. at 288 ("Paragraph 22 specifies notice requirements that must be met *before* a mortgagee may accelerate a loan[.]" (emphasis added)).

Because the March 2025 Notice of Acceleration informed the Fligors that the note had already been accelerated, it is governed by paragraph 19, not paragraph 22, of the mortgage. ECF 20-7, at 3, 5. Entitled "Borrower's Right to Reinstate After Acceleration," ECF 21-1, ¶ 19 (bold

8

omitted), paragraph 19 "places limits and conditions on mortgagors' rights to reinstate a mortgage *after acceleration*," *Thompson*, 486 Mass. at 288 (emphasis added); *accord Marroquin*, 477 Mass. at 90; *Diplomat Prop. Manager*, 99 Mass. App. Ct. 1104. Notably, "paragraph 19 contains no independent notice requirement." *Thompson*, 486 Mass. at 290; *see Gomes v. Harrison*, 97 Mass. App. Ct. 745, 755 (2020) ("Paragraph 19, in contrast to paragraph 22, does not require any notice at all."). As the Fligors concede, "the Notice of Acceleration is not required by the . . . Mortgage." ECF 26, at 6. But even if such a notice were required, the Notice of Acceleration would conform with paragraph 19. That is so because this paragraph and the notice both contain conditional language. *See Stephens*, 2022 WL 1608470, at *5. "*If* Borrower meets certain conditions," paragraph 19 states, "Borrower shall have the right to have enforcement of this Security Instrument discontinued." ECF 21-1, ¶ 19 (emphasis added). It also provides that the "right to reinstate shall not apply in the case of acceleration under [paragraph] 18," *id.*, where "the Property is sold or transferred . . . without Lender's prior written consent," *id.* ¶ 18. In stating conditionally that the Fligors "may still have the right to reinstate the loan" notwithstanding the earlier acceleration, the Notice of Acceleration is consistent with paragraph 19. ECF 20-7, at 3, 5.

Other sessions of this Court have rejected identical challenges to notices of acceleration that similarly stated that the borrower "may" have the right to reinstate the mortgage. *See Kennedy*, 2025 WL 777214, at *6 (dismissing identical claim); *Stephens*, 2022 WL 1608470, at *5-6 (denying preliminary injunction for failure to show a likelihood of success on the merits of the same claim); *see also Peckham v. SN Servicing Corp.*, No. 22-cv-10452-RGS, 2022 WL 16924092, at *2 (D. Mass. Nov. 14, 2022) (dismissing claim "assert[ing] that the Notice of Acceleration . . . used conditional language in describing an unequivocal right"); *Bohannon v. Cenlar, FSB*, No. 22-cv-11010-RGS, 2023 WL 2140479, at *2 (D. Mass. Feb. 21, 2023) (same).

9

The Supreme Judicial Court has likewise found that "an acceleration notice," which informed the borrowers "that their home mortgage loan had been accelerated and that they 'may have the right to reinstate the [m]ortgage [l]oan by paying' the amount due," complied with Section 35A. *HSBC Bank USA, N.A. v. Morris*, 490 Mass. 322, 325 (2022). Since the December 2023 default notice was lawful and the contested March 2025 Notice of Acceleration is valid as neither required by the mortgage nor subject to strict compliance, the defendants are entitled to summary judgment.

## CONCLUSION AND ORDER

For the foregoing reasons, the defendants' motion for summary judgment, ECF 17, is GRANTED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK

Dated: July 14, 2026                    UNITED STATES DISTRICT JUDGE

10